825 P.2d 614

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**John Paul SHEETZ, Defendant–Appellant.**

**No. 12710.**

Court of Appeals of New Mexico.

Dec. 23, 1991.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Robert J. Jacobs, Taos, for defendant-appellant.

## OPINION

PICKARD, Judge.

Defendant appeals his convictions for two counts of trafficking in controlled substances, one for heroin and one for cocaine. Among the issues he raises are that he was entrapped as a matter of law under the objective standard set forth in *Baca v. State*, 106 N.M. 338, 742 P.2d 1043 (1987), and, if not, then at least the court below should have instructed the jury in accordance with his proposed instruction relying on *Baca's* objective standard. Because we believe the evidence raised credibility issues, we cannot say defendant was entrapped as a matter of law. However, defendant's testimony in this case, if credited, showed that the police exceeded the standards of proper investigation under *Baca*. Accordingly, we reverse and remand for further proceedings and for a new trial, if necessary. Because of our disposition, we need not discuss the other issues defendant raises.

The issue of entrapment was raised solely by defendant's testimony, although nothing in the state's case directly cast doubt on that testimony. Indeed, the state's police witnesses admitted that there was an informant who was probably paid $100 on this case.

Defendant testified that he was an oilfield worker when he was introduced, by a co-worker, to Jerry Allan Mabrey in June of 1989. A few days later, Mabrey stopped by defendant's house and offered him heroin. Defendant had used heroin several times in the past, the last time being about a year before this incident. Defendant's former girlfriend was a user.

Defendant accepted Mabrey's offer and the two used the heroin Mabrey brought. During the rest of the summer, Mabrey continued to bring heroin to defendant and the two used it. Sometimes Mabrey would go to defendant's house every day; sometimes it was every few days. The frequency of the visits increased as the summer progressed. By September, defendant was addicted and was buying his own heroin from his former girlfriend's supplier.

In early August, Mabrey asked defendant to get some drugs for Mabrey's friend Milt. Unbeknown to defendant, Milt was an undercover detective. Defendant refused. Later, however, Mabrey began to make repeated requests to defendant to obtain drugs for Milt. Mabrey reminded defendant of all the heroin Mabrey had given defendant. Mabrey had the idea that defendant could overcharge Milt for the drugs and thereby obtain money to buy drugs for Mabrey and defendant to use. At this time, Mabrey was experiencing withdrawal symptoms. Also, defendant was intimidated by Mabrey, whom he considered to be a violent person.

Ultimately, defendant purchased drugs for Milt on two occasions in September. On each occasion, Milt was overcharged. On the cocaine transaction, defendant used the extra money to buy heroin for himself and Mabrey. On the heroin transaction, defendant "pinched" some heroin off the heroin he gave Milt, and defendant and Mabrey used this heroin.

■ This case requires us to decide whether *Baca* is limited to its facts and, if

not, who decides issues under the objective standard for entrapment. These issues arise because, when defendant moved for a directed verdict below, the court below denied the motion, ruling that there were credibility issues involved. However, when defendant requested a non-Uniform Jury Instruction in accordance with *Baca*, the court below would not give such an instruction, believing *Baca* was limited to its facts. This was incorrect, as the state acknowledges.

In *Baca*, the facts were that defendant acted as a mere conduit after the informant arranged a transaction in which Baca did nothing more than get drugs from one police agent and give them to another. There is nothing in the *Baca* opinion itself indicating that its holding is limited to circular transactions. Its holding is that:

> [A] criminal defendant may successfully assert the defense of entrapment, *either* by showing lack of predisposition to commit the crime for which he is charged, *or*, that the police exceeded the standards of proper investigation, as here where the government was both the supplier and the purchaser of the contraband and defendant was recruited as a mere conduit.
> [Emphasis in original.]

*Id.* at 341, 742 P.2d at 1046. This language indicates that the circumstance of a circular transaction is but one of many instances in which the police could exceed the standards of proper investigation. Thus, the fact that Mabrey did not coax defendant into a circular transaction is not fatal to this appeal.

■ Nor do we agree with the state's argument that Mabrey was not an agent of the police. *United States v. Busby*, 780 F.2d 804 (9th Cir.1986), on which the state relies, is distinguishable because the informant in that case was not working as an informant at the time of the relevant transaction. Here, in contrast, the officers admitted that Mabrey was an informant at the relevant time and was probably paid $100 for this case. Thus, the informant here was an agent of the police. *See Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *State v.*

*Padilla*, 91 N.M. 451, 575 P.2d 960 (Ct.App. 1978); *cf. State v. Lopez*, 109 N.M. 578, 787 P.2d 1261 (Ct.App.1990) (private investigator not working for police).

Having determined that *Baca*'s objective standard, focussing on the misconduct of the police, potentially applies to this case, we must next determine (1) whether this case, as *Baca*, calls for a determination as a matter of law by this court that defendant was entrapped; (2) whether the trial court is the proper entity to make the decision; or (3) whether the decision is best left to the jury. In *Baca*, the facts were undisputed that the transaction occurred in a circular fashion, with defendant acting as a mere conduit. Thus, there were no factual issues to decide, and the appellate court could hold as a matter of law that Baca was entrapped. *See also, e.g., State v. Sainz*, 84 N.M. 259, 501 P.2d 1247 (Ct.App. 1972).

■ In this case, however, as the court below noted in denying defendant's motion for directed verdict, there were credibility issues. The court below did not, as the state contends, rule that defendant's testimony was incredible as a matter of law. Nonetheless, defendant's entrapment defense was made by his own testimony, and the state attempted to cast doubt on defendant's testimony by arguing that his story did not ring true. Why, asked the state, would Mabrey provide defendant with hundreds of dollars of heroin in return for a mere $100 payment from the police? The court below was correct that this argument raised a credibility issue. Thus, this is not an appropriate case for this court to find entrapment as a matter of law.

The next question is whether the trial court or the jury should decide the issue, both on remand in this case and in future cases. In our view, both the trial court and the jury should decide, in a manner similar to that in which voluntariness of a confession is decided. *See State v. Burk*, 82 N.M. 466, 483 P.2d 940 (Ct.App.) (jury passes on voluntariness only after judge has independently resolved the issue against the accused), *cert. denied*, 404 U.S. 955, 92 S.Ct. 309, 30 L.Ed.2d 271 (1971). Thus,

even though we hold that there was no entrapment as a matter of law, the court below, on remand in this case, will be able to resolve the issue as a matter of fact. Our ruling on this matter is based on the policies underlying our supreme court's readoption of the doctrine of entrapment under an objective standard, *see Baca v. State,* and our supreme court's recent reaffirmation of the importance of the jury's role in the criminal justice system, *see State v. Sanchez,* 109 N.M. 428, 786 P.2d 42 (1990).

Several jurisdictions that utilize the objective definition of entrapment view the issue as a matter to be resolved by the court without the jury. *See, e.g., Grossman v. State,* 457 P.2d 226 (Alaska 1969); *People v. Turner,* 390 Mich. 7, 210 N.W.2d 336 (1973); *see also* Paul Marcus, *The Entrapment Defense,* §§ 5.06, 5.08 (1989); Bennett L. Gershman, *Prosecutorial Misconduct,* § 1.2(d) (1989); Model Penal Code § 2.13(2); 1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 5.3(b) (1984). There are two reasons for this perspective. First, objective entrapment raises issues concerning the sound administration of justice, which is the unique responsibility of the courts. Second, judges decide cases by written opinions that offer guidance to law enforcement. *See People v. D'Angelo,* 401 Mich. 167, 257 N.W.2d 655 (1977).

Other states hold that the issue may be decided by the trial court if the facts relating to the issue are not disputed; however, when the facts are in dispute and the determination involves matters of credibility, objective entrapment is an issue to be submitted to the jury. *See, e.g., State v. Mullen,* 216 N.W.2d 375 (Iowa 1974); *State v. Powell,* 68 Haw. 635, 726 P.2d 266 (1986); *Rodriguez v. State,* 662 S.W.2d 352 (Tex. Crim.App.1984) (en banc); *State v. Wilkins,* 144 Vt. 22, 473 A.2d 295 (1983). This view is based on the view that determinations of credibility are traditionally the province of the jury. In addition, since the issue turns on both the nature of the inducement used by the police and its effect on people, there is some feeling that the jury should be allowed to determine the issue. *See* 1 LaFave & Israel, *supra.*

■ Because entrapment is uniquely a matter of state law, *Baca v. State,* we believe we are free to adopt a hybrid approach that draws on the strengths of both views. Thus, we hold that the issue should first be resolved by the trial court. The resolution will involve two inquiries. First, what are the factual circumstances involved in the case? Second, do these factual circumstances amount to objective entrapment? *Cf. Aguilar v. State,* 106 N.M. 798, 751 P.2d 178 (1988) (confession case). It is helpful to analyze the second step first. The second step of the analysis is not appropriately a jury issue in the first instance. The determination of the proper standards of police investigation is a question of law and policy to be decided by the courts in the first instance. *People v. Stanley,* 68 Mich.App. 559, 243 N.W.2d 684 (1976); *see also United States v. Russell,* 411 U.S. 423, 441, 93 S.Ct. 1637, 1647, 36 L.Ed.2d 366 (1973) (Stewart, J., dissenting).

■ This question of law should be decided by the trial courts with their conclusions being freely reviewable by the appellate courts. *Cf. Aguilar v. State.* In this case, if on remand the court below finds the facts to be as defendant testified, then it should find entrapment under the objective standard of *Baca* and should dismiss the charges against defendant. The basis for our holding is our understanding of *Baca,* which holds that a defendant is entrapped when the police activity exceeds the proper standards of investigation. We believe that this occurs when the police use undue persuasion or enticement in an unfair manner to induce the defendant to commit a crime when, without such conduct upon the part of the police agent, a reasonable person in defendant's position would not have committed the crime. We derive this standard from prior decisions of this court and the supreme court, as well as the decisions of other states that have adopted an objective view of entrapment.

Prior to *Baca,* New Mexico cases recognized that when the police have a good-

faith belief that the law is being violated by a particular individual, the police may properly provide that person with an opportunity to commit a crime. However, it was "not permissible for an officer to initiate the criminal act, nor to use undue persuasion or enticement to induce the defendant to commit a crime, when without such conduct upon the part of the officer the defendant would not have committed such crime." *State v. Roybal,* 65 N.M. 342, 346, 337 P.2d 406, 409 (1959). This general rule was repeated in a number of cases decided by our supreme court and later this court. *State v. Akin,* 75 N.M. 308, 404 P.2d 134 (1965); *State v. Romero,* 79 N.M. 522, 445 P.2d 587 (Ct.App.1968); *State v. Sanchez,* 79 N.M. 701, 448 P.2d 807 (Ct.App.1968). *See also State v. Sena,* 82 N.M. 513, 484 P.2d 355 (Ct.App.1971) (entrapment does not occur unless the criminal activity is the product of creative activity of law enforcement officials).

In the 1970s, New Mexico's law concerning entrapment began to change. At this time, the determination of entrapment involved weighing the objective indicia of police involvement in the activity against defendant's subjectively determined state of mind. *See State v. Jackson,* 88 N.M. 98, 537 P.2d 706 (Ct.App.1975); *State v. Sainz.* Under this hybrid standard, this court held that:

> When the state's participation in the criminal enterprise reaches the point where it can be said that except for the conduct of the state a crime would probably not have been committed or because the conduct is such that it is likely to induce those to commit a crime who would normally avoid crime, or, if the conduct is such that if allowed to continue would shake the public's confidence in the fair and honorable administration of justice, this then becomes entrapment as a matter of law. [Citations omitted.]

*Id.* 84 N.M. at 261, 501 P.2d at 1249. *See also State v. Jackson; State v. Fiechter,* 88 N.M. 437, 540 P.2d 1326 (Ct.App.1975),

*reversed,* 89 N.M. 74, 547 P.2d 557 (1976). However, this view of entrapment was ultimately rejected, and *Sainz* and *Jackson* were overruled by our supreme court in 1976. *See State v. Fiechter,* 89 N.M. 74, 547 P.2d 557 (1976). In so holding, our supreme court emphasized that the focal issue in entrapment was defendant's predisposition to commit the crime, solely a subjective test. *Id.*

In *Baca,* our supreme court stated that *Fiechter* "needs to be expanded to make allowance for an objective standard." 106 N.M. at 339, 742 P.2d at 1044. Thus, the supreme court did not overrule *Fiechter;* instead, it held that both the subjective and objective views of entrapment would be recognized in New Mexico. We believe that in so holding, the supreme court contemplated that the holdings of *Sainz* and *Jackson,* concerning the objective view of entrapment, would once again become good law.

This view of objective entrapment brings our law closer to the law of other states that have adopted the objective view of entrapment. While the language of the test varies slightly, the focus in these states is whether the methods of persuasion or inducement used by law enforcement officers or their agents are such as to create a substantial risk that the offense would be committed by persons other than those who are ready to commit it. *See State v. Powell; State v. Cripps,* 692 P.2d 747 (Utah 1984); *State v. Wilkins; accord People v. Barraza,* 23 Cal.3d 675, 153 Cal. Rptr. 459, 591 P.2d 947 (1979) (en banc); *State v. Mullen; Grossman v. State; People v. Turner,* 390 Mich. 7, 210 N.W.2d 336 (1973); *Rodriguez v. State; see also* Model Penal Code § 2.13(1)(b).

■ We believe that under this interpretation of the law, defendant's testimony, if believed, was sufficient to establish that he was entrapped within the meaning of *Baca.* The essence of defendant's version of events is that Mabrey, the informant in this case, gave him free heroin until he was addicted and then played on defendant's

addiction to persuade defendant to purchase heroin and cocaine for an undercover police agent. We believe that an informant's addicting someone to heroin and then convincing him to sell heroin to satisfy the craving and to avoid the sickness of withdrawal is an unfair method of persuasion that creates a substantial risk that the crime of trafficking will be committed by persons not otherwise ready and willing to traffic in controlled substances. In addition, we do not believe that the war on drugs should be waged by creating more addicts; such tactics offend our notions of fundamental fairness. *See State v. Sainz.*

However, if on remand the court below does not find the facts to be as defendant testified, the jury should be given the opportunity, under appropriate instructions, to decide the issue. In this case, this means that defendant shall be granted a new trial. We believe that allowing this matter to be decided by the jury is consistent with defendant's right to a jury trial in criminal cases. *See State v. Sanchez,* 109 N.M. 428, 786 P.2d 42. It is also consistent with SCRA 1986, 14–5160, which requires entrapment under the subjective standard to be submitted to the jury when it is at issue. Deciding this case in this manner is consistent with our supreme court's decision in *Baca,* as well as with other supreme court cases in analogous areas. *See Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973).

■ Summarizing, in future cases when defendant raises an issue of whether the police exceeded the standards of proper investigation, the trial court should view the facts in the light most favorable to defendant, and if the facts do not raise an issue of misconduct of state agents exceeding the standards of proper investigation, then the entrapment issue is to be submitted to the jury under UJI Crim. 14–5160, the subjective instruction. If the facts are undisputed or if the trial court, after resolving the facts, believes that they establish misconduct of state agents of the sort described herein or in *Baca* or *Sainz,* the court shall dismiss the charges. If the trial court, after resolving the factual issues, does not find they establish such misconduct on the part of state agents but is of the opinion that another fact finder could so find, it shall submit the matter to the jury under instructions that place the burden of proof on the state, consistent with other defense jury instructions. *State v. Lopez. See also, e.g.,* SCRA 1986, 14–5101 (insanity); 14–5130 (duress); 14–5160 (subjective entrapment).

■ Although defendant's requested instruction on objective entrapment was sufficient to preserve the issue we decide, a more complete instruction, and one more in line with the details of our analysis, would be the following:

> Evidence has been presented that the defendant was induced to commit the crime by law enforcement officials or their agents using unfair methods of persuasion that created a substantial risk that the crime would be committed by a reasonable person in defendant's circumstances who was not otherwise ready and willing to commit the crime. For you to find the defendant guilty, the state must prove to your satisfaction beyond a reasonable doubt that the defendant was not induced to commit the crime by such methods.

We recognize that it is not this court's function to draft jury instructions. *See Alexander v. Delgado.* However, when a uniform jury instruction does not cover a subject, one similar in style to the uniform instructions should be drafted. *See* General Use Note to Uniform Jury Instructions—Criminal. Because *Baca* expanded the defense of entrapment in a manner analogous to the way *State v. Pierce,* 110 N.M. 76, 792 P.2d 408 (1990) altered the elements of the criminal sexual contact crime, we believe that it is helpful to give guidance in the form of a suggested instruction. *Cf.*

*State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991) (court suggested a suitable instruction).

Accordingly, this case is reversed and remanded. In accordance with this opinion, the court below should decide whether it believes defendant's testimony. If so, it should dismiss the charges. If, on the other hand, the court below resolves the objective entrapment issue against defendant, it shall grant a new trial at which the jury shall be given an instruction on objective entrapment similar to that appearing above.

IT IS SO ORDERED.

ALARID, C.J., and APODACA, J., concur.