843 P.2d 376

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Guadalupe GUTIERREZ, Defendant–
Appellant.**

No. 13178.

Court of Appeals of New Mexico.

Oct. 13, 1992.

Certiorari Denied Nov. 18, 1992.

Tom Udall, Atty. Gen., and William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Robert J. Jacobs, Taos, for defendant-appellant.

## OPINION

PICKARD, Judge.

Defendant appeals his conviction for trafficking cocaine. He argues two basic

issues. First, he contends that the trial court erred in failing to grant a mistrial or to promptly admonish the jury when the prosecutor said, "it's not true," after defense counsel questioned a witness about an alleged homicide conviction of a non-witness. Second, he contends that the trial court should have granted a directed verdict or given' one of several tendered jury instructions on objective entrapment. Defendant also contends that cumulative error deprived him of a fair trial, but because we find no error, the doctrine of cumulative error does not apply. *See State v. Martin*, 101 N.M. 595, 600–01, 686 P.2d 937, 942–43 (1984). We affirm.

## FACTS

This case involves some of the same cast of characters as *State v. Sheetz*, 113 N.M. 324, 825 P.2d 614 (Ct.App.1991). Milton Culbertson, an undercover detective, and Jerry Mabrey, a paid police informant, had met defendant at Sheetz's home. They tried unsuccessfully on two occasions to get defendant to obtain drugs for them. The reason that the attempts were unsuccessful was that defendant could not find a supplier. The evidence was that it did not take much effort to get defendant to cooperate. On the day of the offense charged, Culbertson gave defendant $220 with which to purchase cocaine, and defendant found a supplier.

Defendant purchased the cocaine from Roque Aranda. Detective Flint Knight testified that Aranda had worked as a police informant in the past, but that no payments had been made to Aranda for two years. Knight had no knowledge whether Aranda was working for any other government agency on the day of the offense.

Defendant met Culbertson and Mabrey after the purchase, and defendant gave Culbertson the cocaine. Defendant testified that Culbertson and Mabrey had told him that they would give him some of the cocaine he obtained for them. Defendant was a user and explained that this was why he participated in the transaction. When defendant brought back the cocaine to Culbertson, defendant asked for a portion of the drugs. Instead of drugs, he received $10. The evidence conflicted on whether the money was for gas or for drugs.

During the cross-examination of Culbertson, defense counsel asked whether Culbertson knew that Mabrey had been convicted of a homicide. The prosecutor objected to the question and additionally said, "it's not true." At a bench conference, the prosecutor revealed that he had no knowledge of such a conviction, and defense counsel revealed that he had no proof of it. Later, when it appeared that Mabrey had been convicted of voluntary manslaughter some seventeen years earlier, defendant asked to introduce that information into evidence. When the trial court refused on relevancy grounds, defendant asked for a mistrial. Instead, the trial court admonished the jury to disregard the prosecutor's statement.

## PROSECUTORIAL MISCONDUCT

While acknowledging that there is nothing in the record indicating that the prosecutor's conduct was purposeful misconduct, defendant nonetheless contends that the prosecutor's comment was a comment on defense counsel's credibility, which prejudiced the jury against defendant. In addition, defendant appears to contend that the fact of the homicide conviction had some relevance and was therefore admissible. Defendant cites no authority for this additional contention. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). For that reason and for the reason that a non-witness's seventeen-year-old conviction would be inadmissible in any event, *see* SCRA 1986, 11–607, –609, we do not consider the additional contention further.

Defendant's main contention is that Mabrey's record was necessary to show that defense counsel was truthful in asking the question about it and, thus, the trial court should have instructed the jury about it or granted a mistrial. We disagree. Whether error can be cured by an admonition is a question that must be answered according to the particular facts of a case. *State v. Saavedra*, 103 N.M. 282, 285, 705 P.2d 1133, 1136 (1985). The prosecutor's statement here was not purposeful

misconduct. *Cf. State v. Day,* 91 N.M. 570, 573–74, 577 P.2d 878, 881–82 (Ct.App.) (when there is purposeful misconduct it is less likely that an admonition will cure the error), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978). In this case, defendant admitted to committing the crime, and his entrapment defense was weak. The trial judge admonished the jury to disregard the prosecutor's remark about the homicide shortly after the judge learned of the fact of the conviction. Therefore, in the context of this case, we believe the trial court's admonition, given as quickly as the occasion demanded, was sufficient to cure any error otherwise occurring. *See State v. Hoxsie,* 101 N.M. 7, 10, 677 P.2d 620, 623 (1984) (no reasonable probability that prosecutor's comment contributed to the conviction) *overruled on other grounds by Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 731, 779 P.2d 99, 110 (1989); *State v. Pace,* 80 N.M. 364, 370, 456 P.2d 197, 203 (1969) (admonition given the next day was sufficient to cure error).

## ENTRAPMENT

Defendant tendered two entrapment instructions. One involved circular transactions in which a defendant buys drugs from one police agent only to transfer them to another. The other involved law enforcement officers exceeding the bounds of proper investigation.

■ Objective entrapment occurs when law enforcement officers exceed the bounds of proper investigation. *Sheetz,* 113 N.M. at 326, 825 P.2d at 616 (quoting *Baca v. State,* 106 N.M. 338, 341, 742 P.2d 1043, 1046 (1987)). *Sheetz* teaches that law enforcement officers may exceed the bounds of proper investigation in either of two ways: (1) when they coax a defendant into a circular transaction, or (2) when they use unfair methods of persuasion which create a substantial risk that a crime would be committed by a reasonable person in the defendant's circumstances who was not otherwise ready and willing to commit the crime. *See also* Proposed Uniform Jury Instruction 14–5160 (Vol. 31, No. 22, SBB 535). Defendant's tendered jury instruc-

tion on the second theory of objective entrapment was probably insufficient to adequately apprise the jury of the nature of the defense. Notwithstanding that, we address defendant's issue on the merits because the trial court was correct in refusing his instructions because there was no evidence to support either theory. For the same reasons, the trial court was correct in refusing to direct a verdict for defendant.

■ On the circular transaction theory, there was absolutely no evidence that Aranda, from whom the drugs were purchased, was a government agent at the time of the transaction. *See Sheetz,* 113 N.M. at 326, 825 P.2d at 616 (citing *United States v. Busby,* 780 F.2d 804, 806–07 (9th Cir.1986)). The uncontradicted testimony was that Aranda had not been paid as an agent for two years. The fact that another officer did not know if Aranda was working for any other agency is not evidence sufficient to support a finding that he was a government agent. *Cf. State v. Chavez,* 84 N.M. 247, 501 P.2d 691 (Ct.App.1972) (not remembering an event is not a denial that the event occurred).

■ In regard to defendant's contention that the police utilized unfair methods of persuasion, we hold that the facts of this case are not the egregious sort of facts as in *Sheetz* that would allow a jury to find objective entrapment. The key to objective entrapment is not that the police persuade the defendant to commit a crime; that is true of subjective entrapment also. The key is that the police use unfair methods of persuasion that would objectively cause a reasonable person in defendant's circumstances to commit a crime he or she would otherwise not commit. While the proposed uniform jury instruction does not use the word "unfair," we think that concept is inherent in the prohibited methods of persuasion described by the instruction.

In this case, viewing the facts in the light most favorable to defendant, the evidence was that the police or their agents asked defendant to get them drugs three times. Defendant acquiesced because the police told him that he could get some cocaine out of the deal. Unlike the facts in *Sheetz,* the

evidence here did not indicate that the police helped to get defendant addicted to the drugs. In fact, there is not even evidence that defendant was addicted or needed, as opposed to merely wanted, the drugs.

The determination of proper police standards of investigation is a question of law and policy to be decided by the courts. *Sheetz*, 113 N.M. at 327, 825 P.2d at 617. It is therefore for us to determine whether asking a person three times under neutral circumstances and offering a cut of the drugs offends our notions of fundamental fairness and would thereby amount to methods of persuasion which create a substantial risk that a reasonable person in defendant's circumstances would commit a crime he or she was otherwise not ready and willing to commit. We hold that it does not. Thus, the trial court did not err in failing to direct a verdict or to give defendant's requested jury instruction on this type of objective entrapment.

Finally, defendant contends that *Jacobson v. United States*, 503 U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), requires us to reverse. In *Jacobson*, the Supreme Court reversed Jacobson's conviction for violating the federal Child Protection Act and held that the prosecution failed, as a matter of law, to present evidence indicating that Jacobson was predisposed, apart from the acts of governmental agents, to violate the law. The facts in *Jacobson* do not at all resemble the facts of this case. In this case, there was ample evidence of defendant's predisposition to commit the crime and a lack of evidence that the police or its agents made improper efforts to induce him to commit the crime. *Jacobson* does not compel a reversal.

Defendant's conviction is affirmed.

IT IS SO ORDERED.

ALARID, C.J., and DONNELLY, J., concur.