924 P.2d 727

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Vincent VALLEJOS, Defendant–
Appellant.**

**No. 16282.**

Court of Appeals of New Mexico.

July 3, 1996.

Certiorari Granted Aug. 1, 1996.

Tom Udall, Attorney General, Joan M. Waters, Assistant Attorney General, Santa Fe, for plaintiff-appellee.

T. Glenn Ellington, Chief Public Defender, Bruce Rogoff, Acting Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

█ 1. This case provides us with the opportunity to clarify the law of entrapment in New Mexico, as well as to define the standard of review that we use in evaluating the various entrapment issues raised by a defendant when he is claiming objective entrapment. We hold that: (1) predisposition generally still has a place in the New Mexico law of objective entrapment; (2) the question of what are proper standards of police practice is an issue of law to be decided by the trial court, not the jury, and the determination of the propriety of such standards is freely reviewable on appeal; (3) when conflicting evidence is presented, either on the issue of what the police have done or what the defendant has done, and when that evidence, when viewed in the light most favorable to the defendant meets the legal standard of entrapment, a trial court has discretion to which we will defer on the question of whether to dismiss the charges or submit the question of entrapment to the jury; but (4) in the situation outlined in number (3), the trial court must at least submit the matter to the jury and does not have discretion to weigh the evidence and refuse a properly tendered entrapment instruction.

2. Defendant appeals his conviction for possession of cocaine. He raises four issues on appeal: (1) whether the trial court erred by finding, as a matter of law, that there was no objective entrapment in this case and, because of that ruling, refusing to instruct the jury on the defense of objective entrapment as set forth in *Baca v. State,* 106 N.M. 338, 742 P.2d 1043 (1987), and *State v. Sheetz,* 113 N.M. 324, 825 P.2d 614 (Ct.App.1991); (2) whether the trial court erred when it allowed evidence which created the misimpression that the entire police operation had been sanctioned by a judge as legal and proper; (3) whether the trial court improperly excused a juror who agreed with the defense theory of the case; and (4) whether the cumulative impact of these errors denied Defendant due process and a fair trial. We hold that the trial court did not err in finding no objective entrapment as a matter of law and in refusing to submit the matter to the jury. Since Defendant's remaining issues depend upon a favorable resolution of the jury-instruction question, they necessarily fail as well. We affirm.

## FACTS

3. On November 17, 1993, police were involved in a "reverse sting operation" in an area of Albuquerque, New Mexico, known for the presence of significant drug trafficking. In the reverse sting, several undercover police officers acted as street dealers of crack cocaine, several more undercover officers acted as cover to protect the dealers, and another undercover officer remained inside a nearby apartment building as the seller of the cocaine.

4. Defendant approached Special Agent Gutierrez, who was working as cover to protect the undercover dealers, and asked if he could exchange a stereo for some crack-cocaine. Agent Gutierrez replied that he could. Defendant asked Agent Gutierrez if he was a "cop," to which Gutierrez answered that he was not. Defendant left and returned approximately 15 to 20 minutes later with a car stereo and asked Gutierrez if he was ready. Gutierrez accompanied Defendant to the apartment where the seller of the cocaine, Officer Griego, was located. Gutierrez announced Defendant as a client, and Defendant entered the apartment. When Defendant exchanged the stereo for the cocaine, he negotiated with Officer Griego for a larger piece of crack-cocaine than Griego had originally offered. The deal was consummated, and Defendant was arrested.

5. Defendant moved to dismiss the charges against him on the basis of police entrapment. After receiving testimony and arguments from both parties at a hearing on the motion, the trial court found as a matter

of law that there was no objective entrapment.

6. During voir dire, a prospective juror stated that he did not feel that undercover police officers selling drugs was right and that he would be unable to convict someone for buying drugs from an undercover police officer. The trial court excused the prospective juror for cause.

7. At trial, the court allowed the State to introduce evidence demonstrating that the police officers' possession of the cocaine used in the operation was pursuant to a court order. The State's witness testified that the order permitted the police to sell crack cocaine to people who were looking for it.

8. After the evidence was presented, Defendant requested jury instructions on objective entrapment, which the trial court denied. Defendant did not seek the subjective-entrapment instruction. Defendant was subsequently convicted of one count of possession of cocaine in violation of NMSA 1978, Section 30–31–23 (Cum.Supp.1995).

## DISCUSSION

### JURY INSTRUCTION

#### Objective Entrapment and Predisposition

9. On appeal, Defendant argues that the trial court erred when it ruled, as a matter of law, that there was no objective entrapment in this case and when it refused to instruct the jury on the defense of objective entrapment. Additionally, Defendant contends that the description in *Sheetz* of what constitutes objective entrapment, upon which the trial court relied in its decision, incorrectly reinstated a predisposition factor into the *Baca* objective-entrapment standard. We disagree with both of these arguments.

10. New Mexico is one of a limited number of states which recognizes both the subjective defense of entrapment, focusing on the defendant's lack of predisposition, and the objective defense, focusing on improper police inducements and conduct. *See State v. Buendia*, 121 N.M. 408, 410, 912 P.2d 284, 286 (Ct.App.1996). The defense of objective entrapment is premised on the public policy against allowing the police to foster crime. *Id.; see also Baca*, 106 N.M. at 340, 742 P.2d at 1045. However, we hold that merely providing a person with an opportunity to commit a crime, absent any unfair police persuasion or involvement, is not entrapment.

11. As we said in *State v. Gutierrez*, 114 N.M. 533, 535, 843 P.2d 376, 378 (Ct.App.), *cert. denied*, 114 N.M. 501, 841 P.2d 549 (1992),

> *Sheetz* teaches that law enforcement officers may exceed the bounds of proper investigation [and thereby engage in objective entrapment] in either of two ways: (1) when they *coax* a defendant into a circular transaction, or (2) when they use unfair methods of *persuasion* which create a substantial risk that a crime would be committed by a reasonable person in the defendant's circumstances who was not otherwise ready and willing to commit the crime. (Emphasis added.)

Indeed, in all of the New Mexico cases beginning with *Baca*, we find language such as instigate, recruit, entice, coax, persuade, and induce. *Baca*, 106 N.M. at 340–41, 742 P.2d at 1045–46; *State v. Sellers*, 117 N.M. 644, 647, 875 P.2d 400, 403 (Ct.App.), *cert. denied*, 118 N.M. 90, 879 P.2d 91 (1994); *Gutierrez*, 114 N.M. at 535–36, 843 P.2d at 378–79; *Sheetz*, 113 N.M. at 327, 825 P.2d at 617.

12. To be sure, our opinion in *State v. Sainz*, 84 N.M. 259, 261, 501 P.2d 1247, 1249 (Ct.App.1972), contained language that appeared to create a number of alternative methods of entrapment, and one included "conduct ... that if allowed to continue would shake the public's confidence in the fair and honorable administration of justice." However, we pointed out in *Sheetz* that *Sainz* was overruled, and it was only the *Sainz* holding that was resurrected. *Sheetz*, 113 N.M. at 328, 825 P.2d at 618. The *Sainz* holding involved a person acting as a conduit at the specific request of government agents, and we now must emphasize that none of the cases re-establishing a form of objective entrapment have gone so far as to eliminate any focus whatsoever on a hypothetical defendant and how the police methods would have induced him, or persuaded him, or incited him, or coaxed him. All of these words suggest a form of predisposition in that a person who is predisposed will require less

inducement or persuasion to commit the crime. The difference between subjective entrapment and objective entrapment is that, while subjective entrapment focuses on the predisposition of the actual defendant before the court, objective entrapment focuses on the predisposition of a hypothetical person.

■ 13. To the extent that Defendant's contention is that police complicity in illegality "would shake the public's confidence in the . . . honorable administration of justice," and that such complicity should be grounds alone for entrapment, we disagree. The cases recognize that certain forms of criminal behavior may only be investigated and punished by police involvement. *See, e.g., State v. Williams,* 623 So.2d 462, 465 (Fla.1993). To allow such behavior to amount to entrapment would effectively nullify any efforts at eradicating such crime. *See id.; see also State v. Akin,* 75 N.M. 308, 311–12, 404 P.2d 134, 136–37 (1965). Thus, while objective entrapment does focus on police behavior, some element of a potential defendant's behavior must also ordinarily be considered. We therefore reaffirm the holding of *Sellers* in this regard, which rejected the defendant's argument that any predisposition factor is irrelevant in objective entrapment. *See Sellers,* 117 N.M. at 647, 875 P.2d at 403.

14. We note that some of the early formulations of objective entrapment were phrased in terms of whether the methods of persuasion or inducement would persuade the "average person" to commit the offense. *See, e.g., Grossman v. State,* 457 P.2d 226, 229 (Alaska 1969). We further note that subsequent decisions have specifically repudiated such a formulation because, in the words of the Supreme Court of Utah:

> Realistically, an average person or ordinary citizen
>
> . . . does not have any notion of how to reach people who sell drugs, would probably not befriend the sort of stranger who turns out to be an undercover narcotics agent, and could not imagine circumstances short of physical threats that would prompt him to obtain marijuana to sell.

*State v. Cripps,* 692 P.2d 747, 749–50 (Utah 1984); *see also Pascu v. State,* 577 P.2d 1064, 1067 (Alaska 1978) (repudiating the "average person" language in *Grossman* ).

15. While the focus of the objective-entrapment standard properly rests on police conduct, the analysis includes other factors as well. In order to correctly determine whether police actions have exceeded the proper standards of police investigation, the fact-finder must have a reference point by which to judge them. *Sheetz* adopted the "reasonable person in defendant's circumstances who was not otherwise ready and willing to commit the crime" factor as that reference point. *See Sheetz,* 113 N.M. at 328, 825 P.2d at 618. This "reasonable person" standard is not that of a reasonable law-abiding person, for that would bring back the problems discussed by the Utah Supreme Court in *Cripps.* Though the "law-abiding" language was discussed as an analytical guide in *Sellers,* 117 N.M. at 647, 875 P.2d at 403, we expressly avoided reference to such language in *Sheetz* and instead used the language "a reasonable person in defendant's circumstances." We reaffirm the *Sheetz* language today.

16. We further note that SCRA 1986, 14–5160 (Cum.Supp.1995) is characterized by an economy of language not present in our cases. For example, the "reasonable person in defendant's circumstances who was not otherwise ready and willing to commit the crime" is translated as an "ordinary person." We do not believe that the Supreme Court, by adopting the instruction, intended any change in the substantive law of entrapment that our cases have espoused.

■ 17. Nor is the appropriate issue the subjective predisposition of the defendant. Rather, the appropriate standard for objective entrapment is that of a reasonable, neutral, hypothetical person in the defendant's circumstances, taking into account all of the defendant's circumstances, who, while not especially predisposed either to be law-abiding or to violate the law, is not otherwise ready and willing to commit the particular crime and is not merely seeking an opportunity to do so. Thus, while a particular defendant's predisposition is not the focus of the objective standard, inducement, enticement,

or some other form of police creative activity seeking the crime is ordinarily necessary. *Baca,* upon which Defendant relies, clearly sets out and discusses this requirement as well as the long history of case law and legal scholarship supporting it. *Baca,* 106 N.M. at 339–40, 742 P.2d at 1044–45. Our cases since *Baca* have not deviated from this analysis. Rather, they have clarified it. *Sellers,* 117 N.M. at 647, 875 P.2d at 403; *Gutierrez,* 114 N.M. at 535–36, 843 P.2d at 378–79; *Sheetz,* 113 N.M. at 327–29, 825 P.2d at 617–19.

▇ 18. All of this is not to say that there could not be some situation in which the government conduct would be so outrageous that due process would be violated by a conviction without consideration of any predisposition to commit a crime. *See United States v. Russell,* 411 U.S. 423, 431–32, 436, 93 S.Ct. 1637, 1642–43, 1645, 36 L.Ed.2d 366 (1973) (holding, in the context of rejecting the objective view of entrapment, that a situation could exist in which government conduct is so outrageous that due process would be violated). It is, however, to say that garden-variety reverse sting operations do not amount to such outrageous conduct. *See, e.g., Williams,* 623 So.2d at 465; *State v. Smith,* 614 So.2d 778, 780 (La.Ct.App.1993).

*Who Decides the Issue*

19. Defendant contends that where there is a difference of opinion regarding whether the police conduct in question exceeded proper standards of investigation, the jury should be allowed to decide the matter. He argues that the jury, which reflects the views of the community, should be permitted to define the proper standards of police investigation. We disagree because the determination of the proper standards of police investigation is a question of law. *See Sheetz,* 113 N.M. at 327, 825 P.2d at 617.

20. Defendant also argues that, because some members of the community may have a philosophical difference of opinion regarding the propriety of reverse sting operations, the issue should be submitted to the jury so that it may determine how the police should best do their job. We do not agree. While some people may feel that reverse stings are poor police strategy or a misguided waste of tax-payer money, this does not mean that they constitute misconduct. *See Sheetz,* 113 N.M. at 329, 825 P.2d at 619.

21. Nor does it mean that the jury is the appropriate body to decide the issue. The portion of *Sheetz* on which Defendant relies for the proposition that the jury is the appropriate body simply noted that juries may appropriately decide the effect of police inducement on people. *See id.* at 327, 825 P.2d at 617. It did not state that juries should decide what constitutes sound administration of justice. *Id.* Juries should not decide what constitutes the sound administration of justice any more than they should decide, for example, what elements constitute first degree murder. What juries decide in a first degree murder case is whether the facts of the case measure up to those elements. Similarly, in an entrapment case, they decide whether the facts measure up to the legal standard of entrapment set forth in the instructions.

▇ 22. The unpopularity of a particular police tactic does not eliminate the requirement that the defendant show that the hypothetical person would be improperly induced or persuaded to commit the crime in order to support an objective entrapment instruction. *Gutierrez,* 114 N.M. at 535, 843 P.2d at 378 (key to objective entrapment is that police use unfair methods of persuasion that would objectively cause a reasonable person in the defendant's circumstances to commit a crime he would not otherwise commit); *Sheetz,* 113 N.M. at 327, 825 P.2d at 617 (entrapment occurs when police use unfair persuasion or enticement in an unfair manner to induce the defendant to commit a crime which, without the police misconduct, a reasonable person in the defendant's circumstances would not have committed); *see also Baca,* 106 N.M. at 340–41, 742 P.2d at 1045–46 (defendant was improperly induced to commit crime and therefore was entrapped).

*Standard of Review*

▇ 23. We next determine whether Defendant's evidence met the objective-entrapment standard and how that determination is made at trial and on appeal. A trial court

engages in a two-step process. The trial court must: (1) determine the proper standards of police investigation, and (2) determine whether the facts establish such police misconduct in order to decide whether to dismiss the case or submit a jury instruction on objective entrapment.

24. As to the first step, we repeat that "[t]he determination of the proper standards of police investigation is a question of law and policy to be decided by the courts in the first instance." *Sheetz*, 113 N.M. at 327, 825 P.2d at 617; *accord Gutierrez*, 114 N.M. at 536, 843 P.2d at 379. The trial court's decision on this issue is freely reviewable on appeal. *Sheetz*, 113 N.M. at 327, 825 P.2d at 617.

25. The second step can lead to four possibilities. The first possibility is that the trial court views the evidence in the light most favorable to the State. If, notwithstanding such a view, the facts clearly establish state-agent misconduct that precipitated the defendant's crime of the sort described in *Baca* or *Sheetz*, the trial court must find entrapment as a matter of law and dismiss the charges. This, like the first step, is a question of law that is freely reviewable on appeal. *See Owen v. Burn Constr. Co.*, 90 N.M. 297, 301, 563 P.2d 91, 95 (1977) (where facts are undisputed and inferences not open to doubt, issue is a question of law for court, not fact to be submitted to the jury).

26. The second possibility is that the trial court could be confronted with conflicting facts that raise issues of credibility, which in the light most favorable to the State would not support entrapment, but in the light most favorable to the defendant could support entrapment. In this situation, upon a defendant's motion to dismiss, a trial court could resolve any factual issues in the defendant's favor and find that those facts establish state-agent misconduct of the sort described in *Baca* or *Sheetz*. If this occurs, the trial court may find objective entrapment and dismiss the charges. *Sheetz*, 113 N.M. at 329, 825 P.2d at 619. This is a fact-based decision and requires appellate deference to the fact-finder. *See Buendia*, 121 N.M. at 410, 912 P.2d at 286.

27. The third possibility is that, in the same situation as the second possibility, the trial court will not find objective entrapment, as a matter of fact, but the trial court will still instruct the jury on the defense. If the facts are disputed and raise issues of credibility, or if the facts are not disputed but there is some evidence, no matter how slight or incredible it may seem to the trial court or to us, upon which another fact-finder could find the type of misconduct contemplated in *Baca* or *Sheetz*, the trial court shall submit the matter to the jury under the objective-entrapment instruction. *Sheetz*, 113 N.M. at 329, 825 P.2d at 619; *see State v. Diaz*, 121 N.M. 28, 30, 908 P.2d 258, 260 (Ct.App.) (failure to instruct the jury on a lesser included offense is reversible error if there is evidence tending to establish the lesser offense), *cert. denied*, 120 N.M. 828, 907 P.2d 1009 (1995); *State v. Lara*, 110 N.M. 507, 515, 797 P.2d 296, 304 (Ct.App.) (even where there is only slight evidence to support a defense, the trial court must give the instruction), *cert. denied*, 110 N.M. 330, 795 P.2d 1022 (1990); *State v. Armijo*, 90 N.M. 614, 617, 566 P.2d 1152, 1155 (Ct.App. 1977) (though defendant's version of events may seem incredible, nevertheless it is evidence); *State v. Duran*, 80 N.M. 406, 407, 456 P.2d 880, 881 (Ct.App.1969) (defendant is entitled to instruction on lesser included offenses if there is some evidence tending to establish them).

28. The determination of whether there is some evidence tending to establish objective entrapment or another defense and requiring a jury instruction on the issue is a question of law and is freely reviewable on appeal. *See Duncan v. Kerby*, 115 N.M. 344, 347–48, 851 P.2d 466, 469–70 (1993) (questions of law are reviewed de novo); *State v. Werner*, 115 N.M. 131, 134, 848 P.2d 1, 4 (Ct.App.1992) (questions of law are freely reversible on appeal), *rev'd on other grounds*, 117 N.M. 315, 871 P.2d 971 (1994); *Sheetz*, 113 N.M. at 327, 825 P.2d at 617 (same). When reviewing this issue, we look at the evidence in the light most favorable to the giving of the instruction. *See Poore v. State*, 94 N.M. 172, 174–75, 608 P.2d 148, 150–51 (1980) (defense instructions should be

given where there is evidence to support them).

29. This standard of review flows from the respective roles of the court and the jury in trials, as well as from the right to a jury trial itself. As stated in *Strauss v. United States,* 376 F.2d 416, 419 (5th Cir.1967),

> We find no requirement that a requested charge encompass, in the trial judge's eyes, a believable or sensible defense. The judge is the law-giver. He decides whether the facts constituting the defense framed by the proposed charge, if believed by the jury, are legally sufficient to render the accused innocent. The jury is the fact-finder. If the trial judge evaluates or screens the evidence supporting a proposed defense, and upon such evaluation declines to charge on that defense, he dilutes the defendant's jury trial by removing the issue from the jury's consideration. In effect, the trial judge directs a verdict on that issue against the defendant. This is impermissible.... The judge must, therefore, be cautious and unparsimonious in presenting to the jury all of the possible defenses which the jury may choose to believe.

(Citation omitted.)

■ 30. The fourth possibility is that the trial court, viewing the facts in the light most favorable to the defendant, will find that the facts do not raise an issue of police misconduct that precipitated the defendant's crime and that no reasonable fact-finder could find that they do. Though we have stated that slight and seemingly incredible evidence will be enough to support a jury instruction, evidence that does not establish the elements of the defense will not be sufficient. *Gutierrez,* 114 N.M. at 535, 843 P.2d at 378 (affirming refusal to give defendant's requested instructions that were unsupported by evidence). If this is the case, the trial court may find, as a matter of law, that there is no objective entrapment and the jury will receive only the subjective-entrapment instruction if there is evidence to support it. *Sheetz,* 113 N.M. at 329, 825 P.2d at 619. This too is a question of law to be decided by the trial court, and it is freely reviewable by the appellate courts. *Werner,* 115 N.M. at 134, 848 P.2d at 4; *Sheetz,* 113 N.M. at 327, 825 P.2d at 617; *Duncan,* 115 N.M. at 347–48, 851 P.2d at 469–70.

*Application of Standard to This Case*

31. In this case, there were no disputed facts raising questions of credibility that would require the issue to be submitted to a jury, and there was no evidence to support the objective-entrapment defense. The trial court viewed the facts in the light most favorable to Defendant and determined that they did not raise an issue of police misconduct and that no reasonable fact-finder could so find.

■ 32. The trial court is not required to give an instruction which the evidence does not support. *Gutierrez,* 114 N.M. at 535, 843 P.2d at 378; *State v. Calvillo,* 110 N.M. 114, 120, 792 P.2d 1157, 1163 (Ct.App.), *cert. denied,* 110 N.M. 72, 792 P.2d 49 (1990). Defendant argues that this deprives him of his right to a jury trial, but a defendant is entitled to an instruction on his theory of the case only if there is evidence to support it. *State v. Ontiveros,* 111 N.M. 90, 93, 801 P.2d 672, 675 (Ct.App.), *cert. denied,* 111 N.M. 77, 801 P.2d 659 (1990).

■ 33. In the instant case, there is no evidence that the police persuaded or induced Defendant or anyone else in any way to purchase drugs from them. The fact that police created an opportunity for Defendant to commit a crime is not improper as a matter of law. There was no evidence that the police enticed anyone, coaxed anyone, or even attempted to persuade anyone, much less Defendant. The police conduct here did not create a substantial risk that the crime would be committed by a reasonable person in Defendant's circumstances who was not otherwise ready and willing to commit the crime. *See Sheetz,* 113 N.M. at 328, 825 P.2d at 618. The trial court did not err in its determination that no reasonable fact-finder could find objective entrapment in this case. Nor is this case one of those exceedingly rare cases that rises to the level of outrageousness that would amount to a due process violation. *See Russell,* 411 U.S. at 431–32, 93 S.Ct. at 1642–43.

*ADMISSION OF MISLEADING EVIDENCE; EXCUSAL OF JUROR; CUMULATIVE ERROR*

34. Defendant argues that the trial court's admission of misleading evidence as to the legality of the reverse sting was reversible error. We disagree. In order for the admission of evidence to be reversible error, the defendant must show prejudice. *State v. Wright*, 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct.App.1972). Since the only relevance of the effect of this evidence upon the jury would be to discredit Defendant's defense of objective entrapment, and since we have already found that the trial court did not err in ruling as a matter of law that Defendant was not entrapped, the admission of the evidence did not prejudice Defendant and thus could not constitute reversible error.

35. Defendant also contends that the trial court's excusal for cause of a potential juror who agreed with the defense theory of the case denied Defendant his right to a jury trial and was reversible error. The standard of review for this issue is abuse of discretion. *State v. Ford*, 81 N.M. 556, 558, 469 P.2d 535, 537 (Ct.App.1970). Abuse of discretion involves an erroneous conclusion or judgment clearly against the logic and effect of the facts and circumstances before the trial court. *State v. Hargrove*, 81 N.M. 145, 147, 464 P.2d 564, 566 (Ct.App.1970). While a defendant is entitled to a fair and impartial jury, he is not entitled to a jury biased in his favor and willing to disregard the law in order to acquit him. *Ford*, 81 N.M. at 558, 469 P.2d at 537. The juror specifically stated that there was "no way" he would be able to convict a man to whom the police had sold drugs. His statements to the trial court clearly indicated that the juror would have been unable to impartially follow the requirements of the law. This is a valid reason for excusing a potential juror from the panel. *See State v. Hutchinson*, 99 N.M. 616, 620, 661 P.2d 1315, 1319 (1983). We find no abuse of discretion in the trial court's excusal of the juror for cause. Indeed, the trial court would have erred had it not excused the juror for cause.

36. Lastly, Defendant asserts that the cumulative effect of the trial court's errors constitutes fundamental error and requires reversal. However, since we find that there were no errors and that Defendant received a fair trial, the doctrine of cumulative error does not apply. *State v. Larson*, 107 N.M. 85, 86, 752 P.2d 1101, 1102 (Ct. App.), *cert. denied*, 107 N.M. 74, 752 P.2d 789 (1988).

**CONCLUSION**

37. Defendant's conviction is affirmed.

38. **IT IS SO ORDERED.**

BOSSON and BUSTAMANTE, JJ., concur.