This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                          **NO. 29,011**

**FRANK AMOS LUCERO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Eugenio S. Mathis, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant Frank Amos Lucero appeals his convictions of second degree murder and child endangerment for shooting and killing John Paul Gonzales and, before doing so, pointing a gun in the direction of Franchesca Saiz who was holding her infant child. On appeal, Defendant primarily argues that he was denied his right to present evidence that Gonzales was a member of a notoriously violent prison gang to support the self-defense instruction that was given to the jury. Defendant also argues that the court erred in refusing to give a self-defense instruction as a defense to child endangerment. Defendant further argues that there was insufficient evidence of child endangerment and also argues that he was improperly sentenced. We affirm on all issues except sentencing.

**BACKGROUND**

The facts essentially are the following. Defendant was at another person's house with several other persons. He had a handgun for personal protection. He indicated that he wanted to get rid of some drugs and Franchesca called Gonzales and handed the phone to Defendant, upon which Gonzales asked Defendant, "why the fuck [Defendant] was talking shit about him" and threatened to "fuck [Defendant] up." Defendant was scared and handed the phone back to Franchesca. Robert Sandoval, by whom Defendant felt intimidated and with whom Defendant did not have a good relationship, also spoke to Gonzales. Gonzales came to the house and told someone

2

to have Franchesca come outside. Sandoval and Franchesca went outside to see Gonzales. Sandoval and Gonzales were good friends. Apparently, Defendant told one of the detectives that he saw Gonzales point a gun at him. Franchesca went back into the house with her infant child, and Defendant pointed his gun at her and her child that she was still holding. Defendant then shot more than once from the house killing Gonzales.

**Evidence of Gang Membership**

Defendant tendered evidence of Gonzales's prison gang membership in "Syndicato Nuevo Mexico," also known as "SNM," to show a basis for Defendant's fear of Gonzales. The district court did not permit Defendant to introduce the evidence, stating that only Gonzales's reputation for violence was at issue on self-defense and not the reputation of the gang. The court relied in part on Rule 11-404(A)(2) NMRA barring character evidence, but indicated that if Defendant could produce a witness to testify that Gonzales had a reputation for violence, that testimony would be admissible. The court also expressed concern that if Defendant were allowed to introduce the evidence, he would open himself up to prejudicial examination on his own prison incarceration during which he met Gonzales, a concern the court appears to have harbored despite Defendant's indication that he was willing to take that risk.

Defendant asserts that the court abused its discretion in refusing to allow him to present evidence of Gonzales's gang affiliation in furtherance of his self-defense claim. Defendant complains that the jury was unable to hear evidence that Defendant knew Gonzales and Sandoval were members of the SNM gang and that Defendant was personally aware of Gonzales's reputation for violence because of Gonzales's affiliation with SNM. Defendant asserts that the evidence he sought to place before the jury "would have lent perspective to [his] claim of self-defense, greater significance to . . . Gonzales'[s] telephonic threats, and legitimacy to [Defendant's] fear of . . . Gonzales." In general, we review the exclusion of evidence for abuse of discretion. *State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *Id.*

Rule 11-404(A)(2) states:

Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: . . . In a criminal case, and subject to the limitations imposed by Rule 11-413 NMRA, evidence of a pertinent trait of character of the victim of the crime offered by an accused[.]

Rule 11-405(A) NMRA states: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry

4

is allowable into relevant specific instances of conduct." Rule 11-405(B) states: "In cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of that person's conduct." In *Armendariz*, 2006-NMSC-036, ¶ 17, the Court explained that in cases in which a defendant asserts a claim of self-defense, "evidence of specific instances of a victim's prior violent conduct may not be admitted to show that the victim was the first aggressor"; further, "only reputation or opinion evidence should be admitted to show that the victim was the first aggressor"; and in addition, "evidence of specific instances of the victim's prior violent conduct of which the defendant was aware may be admitted to show the defendant's fear of the victim."

We are unable to determine that the district court's ruling was an abuse of discretion. Defendant proffered no evidence of any prior specific instance of misconduct on Gonzales's part. The evidence Defendant wanted to present could do nothing more than provide a basis on which to infer that Gonzales belonged to a gang whose purpose was to harm others. We therefore hold that the court did not abuse its discretion in excluding the evidence.

**Self-Defense Instruction on Child Endangerment**

The jury was instructed on the elements of self-defense on the second degree murder charge because there was evidence sufficient to justify a reasonable jury

determination that Defendant acted in self-defense when he shot Gonzales. However, the court did not permit a self-defense instruction relating to the aggravated assault and child endangerment charges. Because Defendant was not convicted of aggravated assault, we consider Defendant's point only in relation to the child endangerment charge. We review the propriety of denying a jury instruction de novo. *See State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. We view the evidence in the light most favorable to the giving of the requested instruction. *State v. Vallejos*, 1996-NMCA-086, ¶ 28, 122 N.M. 318, 924 P.2d 727, *aff'd in part and rev'd in part on other grounds*, 1997-NMSC-040, 123 N.M. 739, 945 P.2d 957.

Defendant argued for the requested instruction based on the rationale that he was allowed a self-defense instruction on the second degree murder charge, all of the counts with which he was charged arose from the same incident, and the entire course of events took place in a matter of seconds. *See State v. Abeyta*, 120 N.M. 233, 243, 901 P.2d 164, 174 (1995) ("[W]here an innocent bystander is accidentally killed during the attempt to defend onself, the doctrine of self-defense provides a defense against the unintended killing."), *abrogated on other grounds by State v. Campos*, 1996-NMSC-043, 122 N.M. 148, 921 P.2d 1266. In *State v. Coffin*, 1999-NMSC-038, ¶ 11, 128 N.M. 192, 991 P.2d 477, the defendant sought an instruction that would

6

have permitted a self-defense argument as to a person who may not have imposed an immediate threat or danger to the defendant. The Court stated:

> While it is true that a person may act in self-defense against multiple attackers acting in concert, this principle applies only to the extent that each accomplice poses an immediate danger of death or great bodily harm, thereby necessitating an act of self-defense. [The defendant's] tendered instruction would have allowed a claim of self-defense against an accomplice to an attacker despite the fact that the accomplice posed no immediate danger of death or great bodily harm and despite a lack of necessity for the actions against the accomplice. Therefore, [the defendant's] instruction is contrary to the law of New Mexico regarding self-defense, and the trial court properly denied [the defendant's] request to so instruct the jury.

*Id.* ¶ 12 (citation omitted).

The evidence in the present case did not support a self-defense instruction on the child endangerment charge. Defendant's conduct relating to Franchesca and the child she was holding occurred before Defendant shot Gonzales. The endangerment did not occur from any fall out from the shooting. That Defendant may have seen Gonzales with a gun before this endangerment is insufficient to tie his endangerment conduct to his reaction to Gonzales. Further, there is no indication that the jury would have acquitted Defendant of child endangerment based on self-defense where the jury did not buy self-defense related to Defendant's shooting Gonzales. We hold that the court did not err in refusing Defendant's tendered self-defense instruction on the child endangerment charge.

7

**Sufficiency of the Evidence**

Defendant contends that the evidence was not sufficient for the child endangerment conviction. We determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Graham*, 2005-NMSC-004, ¶ 6, 137 N.M. 197, 109 P.3d 285 (internal quotation marks and citation omitted). We review "the evidence in the light most favorable to the [S]tate, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* (internal quotation marks and citation omitted). And we determine "whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id*. (emphasis omitted) (internal quotation marks and citation omitted).

The statute in question, involving child abuse by endangerment, requires that the State prove Defendant caused a child under the age of eighteen to be placed in a situation that may have endangered her life or health and did so with reckless disregard. NMSA 1978, § 30-6-1(A)(3), (D)(1) (2005) (amended 2009). Reckless disregard requires that a defendant "knew or should have known [his] conduct created a substantial and foreseeable risk, [he] disregarded that risk and . . . was wholly

8

indifferent to the consequences of the conduct and to the welfare and safety of [the child]." UJI 14-604 NMRA. "Child abuse by endangerment, as opposed to physical abuse of a child, is a special classification designed to address situations where an accused's conduct exposes a child to a significant risk of harm, even though the child does not suffer a physical injury." *State v. Chavez*, 2009-NMSC-035, ¶ 15, 146 N.M. 434, 211 P.3d 891 (emphasis omitted) (internal quotation marks and citation omitted). "Under this standard, an accused's culpability is premised upon the degree of danger created by his conduct." *Id.* The phrase "may endanger" means that there is a "reasonable probability or possibility that the child will be endangered." *Id.* ¶ 16 (internal quotation marks and citation omitted).

In this case, Franchesca testified that Defendant pointed a gun at her and her child, whom she was holding, when she was about to walk into the house. Defendant contends that this indicated nothing more than "speculation of potential harm, not evidence of a truly significant risk of serious harm." *See id.* ¶ 22 (noting that the legislative purpose behind the child endangerment statute is "to punish conduct that creates a truly significant risk of serious harm to children").

We reject Defendant's insufficient evidence challenge to the child endangerment conviction. Evidence showed that he pointed a loaded handgun directly at Franchesca and at her child. A rational juror could conclude that this conduct came

within the statute and was proved beyond a reasonable doubt. *See State v. McGruder*, 1997-NMSC-023, ¶¶ 37-38, 123 N.M. 302, 940 P.2d 150 (determining that the defendant's act of pointing a loaded gun at a child's mother and threatening to kill her, while her two-year-old daughter stood behind her, was sufficient to support a jury determination that the child's life or health had been endangered), *abrogated on other grounds by Chavez*, 2009-NMSC-035; *State v. Ungarten*, 115 N.M. 607, 609-10, 856 P.2d 569, 571-72 (Ct. App. 1993) (holding that evidence was sufficient to support endangerment where the defendant brandished a knife in a threatening and menacing manner and the almost eleven-year-old child could not discern whether the knife was directed at him or his father), *abrogated on other grounds by Chavez*, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891.

**Legality of Sentence**

After Defendant's conviction of second degree murder and child endangerment and acquittal of aggravated assault with a deadly weapon, the court entered its judgment and sentence that ordered that Defendant's sentences of fifteen years for second degree murder and three years for child endangerment run concurrently; however, the court also imposed a firearm enhancement of one year each on each of the two counts to run consecutively, for a total of seventeen years incarceration.

A challenge to an illegal sentence raises a jurisdictional question that may be

addressed for the first time on appeal. Rule 12-216(B) NMRA; *State v. Shay*, 2004-NMCA-077, ¶ 6, 136 N.M. 8, 94 P.3d 8. We review the legality of a sentence de novo. *State v. Lovato*, 2007-NMCA-049, ¶ 5, 141 N.M. 508, 157 P.3d 73.

Defendant does not quarrel with the basic sentences for the crimes on which he was convicted, nor does he quarrel with the court's firearm enhancement of each count. Defendant contends that the court committed reversible error in ordering the firearm enhancements to be served consecutively. He argues that "the basic sentence and the enhancement are one sentence and cannot be bifurcated," citing *State v. Bachicha*, 111 N.M. 601, 609, 808 P.2d 51, 56 (Ct. App. 1991). The State agrees that the sentence is improper and should be corrected. So do we.

The State argues that the court intended to impose a seventeen year sentence. The State asserts that "[t]he district court . . . ordered the three-year basic sentence for child abuse and the sixteen-year sentence for second degree murder [which included one year for a firearm enhancement] to run concurrent to each other but consecutive to the one-year firearm enhancement on the child abuse conviction, for a sentence of seventeen years."

Based on a view that this Court should not divest the district court of jurisdiction to impose a lawful sentence totaling seventeen years, the State asks this Court to vacate Defendant's sentence and remand for imposition of a new sentence as

deemed appropriate by the district court, to include sentencing Defendant to sixteen or seventeen years.  In his reply brief, Defendant does not attempt to dissuade us from such a remand; he simply "requests that his case be remanded to the district court to correct the legal error in sentencing."

**CONCLUSION**

We affirm on all issues except that of sentencing.  We reverse the court's sentence and remand for appropriate sentencing.

**IT IS SO ORDERED.**


_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____

**JAMES J. WECHSLER, Judge**


_____

**MICHAEL D. BUSTAMANTE, Judge**