593 So.2d 1060 (1992)
Kevin KELLY, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 90-0465.
District Court of Appeal of Florida, Fourth District.
January 3, 1992.
*1061 Richard L. Jorandby, Public Defender, and Cherry Grant, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.

ON REHEARING
POLEN, Judge.
The court, sua sponte, voted to consider this appeal and appellant's motion for rehearing en banc. The court having then voted to a six-to-six tie, the cause reverts to the original panel. Fla.R.App.P. 9.331(a).
We grant rehearing and substitute the following for the opinion dated June 19, 1991:
The appellant was arrested for purchasing cocaine within 1000 feet of a school in violation of section 893.13(1)(e), Florida Statutes (1989). After being charged with the crime, the appellant moved to dismiss the charges against him. This appeal followed the trial court's denial of the appellant's motion to dismiss, and is based on two grounds. The first is that he was caught in a reverse sting operation and the second is that the police made, by reconstitution, crack cocaine for use in the operation. The appellant argued on both grounds that his constitutional right to due process of law was violated.
We wish to clarify that in the prior opinion we did not mean to imply that the constitutional implications involved in the reconstitution or manufacture of cocaine into "crack" were decided in State v. Burch, 545 So.2d 279 (Fla. 4th DCA 1989), aff'd, Burch v. State, 558 So.2d 1 (Fla. 1990). We only wished to point out that the use of reverse sting operations does not, in and of itself, cause a defendant's constitutional rights to be violated, even if the reverse sting is specifically set up within one thousand feet of a school. Burch.
We have reconsidered the issue of the police manufacture or reconstitution of powdered cocaine into "crack" rocks, and we find that the practice is illegal. We hold that the use by the police of such reconstituted "crack" infringed on the appellant's right to due process of law. In other words, the police agencies cannot themselves do an illegal act, albeit their intended goal may be legal and desirable.
Manufacture is defined in section 893.02(12)(a), Florida Statutes (1989), as:
The production, preparation, propagation, compounding, cultivating, growing, conversion, or processing of a controlled substance either directly or indirectly, by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging of the substance or labeling or relabeling of its container....
(Emphasis supplied.)
Thus, it seems that the statute is sufficiently broad as to encompass the reconstitution of regular cocaine into "crack," or rock cocaine. Depositions of the police chemist supplied with the record in the instant case support our decision that the process of reconstitution constitutes manufacture under Chapter 893, Florida Statutes (1989).[1] Certainly, as Judge Letts wrote in the dissent from our original opinion, there is more to this reconstitution *1062 process than "simply adding hot water to instant coffee grounds."
Section 893.13 provides several exclusions from its application for police officers acting in the course of their duties, but these exclusions apply only and specifically to the possession and delivery of controlled substances. See § 893.13(5), Fla. Stat. (1989). If the legislature intended that police officers be permitted to manufacture "crack", or any controlled substance, before its possession or delivery, then such permission would presumably appear on the face of the statute. The legislature, if it intends to allow such practices, must expressly indicate their intent so that the courts can apply the law accordingly. At this time, however, there is no authority for the police to manufacture controlled substances by reconstitution or otherwise.
We find that the Sheriff of Broward County acted illegally in manufacturing "crack" for use in the reverse sting operation which led to the arrest of the appellant. Even more disturbing is the fact that some of the "crack," which is made in batches of 1200 or more rocks, escapes into the community where the reverse sting operations are conducted. The police simply cannot account for all of the rocks which are made for the purpose of the reverse stings.
Such police conduct cannot be condoned and rises to the level of a violation of the constitutional principles of due process of law. State v. Glosson, 462 So.2d 1082 (Fla. 1985). Accordingly, we reverse the appellant's conviction and we instruct the trial court, on remand, to enter an order of discharge.
HERSEY, J., dissents with opinion.
LETTS, J., specially concurs with opinion.
HERSEY, Judge, dissenting.
It is one thing to express righteous indignation over the fact that police illegally "manufacture" drugs in the first instance and then, in the second instance, allow some of those drugs to escape into the community. It is quite another thing, however, to suggest that one who buys such drugs acquires immunity from prosecution because his constitutional right to due process has been violated by that activity. Because I disagree with this illogical transference for several reasons, I respectfully dissent from the majority opinion.
The legislature has drawn an imaginary circle with a radius of 1000 feet around each of our schools. Drug dealers who penetrate that protective mantle are subjected to severe penalties. The public policy prompting the creation of that circle is that school children should not be subjected to either the temptations or the potential for violence associated with drug neighborhoods. The real tragedy here, then, is not that the police "manufacture" drugs, but that the police conduct stings and reverse stings near schools. If the police conduct at issue in this case violates the due process rights of anyone, it is the students, and their parents as parents, as citizens, and as taxpayers. This violation of the public's rights is hardly vindicated by immunizing a person who, by purchasing or selling drugs however manufactured, actually contributes to the violation in a very real way with potentially devastating consequences.
Another aspect of the problem is that the process which we condemn is simply the conversion of cocaine powder to cocaine rocks. We should note that the police have not thereby increased the total quantity of drugs in the marketplace; they merely have changed the form of a portion of the available supply. The conversion process that was employed here is one which any reasonably intelligent eighth-grader, after reading the chemist's testimony in this case, could readily replicate. That being so, is the police action, while technically a violation, really sufficiently egregious to merit the condemnation which we heap upon it? Standing alone, without reference to where, when or whom, does this conversion by the police shock the conscience of the court? I suggest that it ought not.
There is yet another aspect of this case that is disturbing: at some point in time the police converted cocaine powder to cocaine *1063 rock. Does it matter when? Should it? The point, however, is that what the police did in this case is to deliver that cocaine rock in a reverse sting operation, which is condoned by specific statutory authority. Are we now and in all future cases to explore the source of the contraband? It seems to me that an affirmative answer to this question is pregnant with adverse implications. For example, suppose the cocaine rock produced by the police is in some way distinctive. Suppose, then, that the police sell several rocks in this reverse sting operation. One of the buyers goes across town and resells a rock to an undercover agent conducting a sting operation. He is immediately arrested. Remember the source of the cocaine rock: it was illegally "manufactured" by the police. Have the seller's due process or other constitutional rights been violated? I strongly suggest a negative answer. As a judge, I would not relish the task of drawing an esoteric line between the "new" product and the "second hand" product in future cases.
In summary, while I may personally deplore the operation of stings and reverse stings in close proximity to schools, what we do in this case will not deter that activity. It will simply send the message that the police may not use "manufactured" drugs in those operations. In my view this misses the point. And along the way we vindicate the due process right of a drug purchaser (and all drug dealers under similar circumstances) not to have the police ensnare him with rock cocaine bearing the taint of having been illegally "manufactured" by the police. In my judgment this is not a worthwhile endeavor, and therefore I dissent.
LETTS, Judge, specially concurring.
I must protest Judge Hersey's dissent.
In the first place, I do not perceive that police stings and reverse stings near schools are "the real tragedy" nor do I "deplore" them.
My agreement with the majority is predicated on my belief that it is a denial of due process to allow the police to manufacture this deadly form of drug and then distribute it. To suggest that cocaine rocks are simply another converted form of cocaine, and no more, may be technically correct, but in practice, the two forms are worlds apart.
NOTES
[1] The process involves the transformation of powdered cocaine, already in police custody, into rock form. The police chemist testified that the process involves the mixture of water and baking soda followed by a procedure which aids in the crystallization of the diluted mixture.