742 So.2d 830 (1999)
Donat McDONALD and Dorrell Bryan, Appellants,
v.
STATE of Florida, Appellee.
Nos. 98-3212, 98-3240.
District Court of Appeal of Florida, Fourth District.
September 8, 1999.
Rehearing Denied November 3, 1999.
Curt Obront and Paul A. McKenna of McKenna & Obront, Coconut Grove, for appellants.
Robert A. Butterworth, Attorney General, Tallahassee, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
Donat McDonald was charged with both possession and delivery of marijuana, and Dorrell Bryan was charged with possession of marijuana, after officers from the City of Lauderhill Police Department discovered cannabis in their home while executing a search warrant. Both appellants pled nolo contendere and reserved the right to appeal the trial court's denial of their motion to suppress the evidence and motion to dismiss the information on the ground that the police's operation of a reverse-sting operation from their apartment, *831 without their consent, constituted outrageous police conduct and violated their right to be free from unreasonable searches and seizures. Although we find the police conduct in this case highly improper and offensive, for the reasons discussed below, we affirm.
In February 1998, Officer Sarvis, along with five other officers, entered appellants' residence to execute a search warrant. The officers discovered thirty-five individually packaged bags of marijuana within twenty to thirty minutes of entering the apartment. After placing Bryan and Mc-Donald under arrest, the officers brought into the apartment more than thirty pairs of handcuffs, fingerprinting equipment, narcotics test kits, and a bin containing marijuana from the police department's property and evidence room in order to conduct a reverse-sting operation. The operation lasted from approximately 6:30 p.m. until 1:00 a.m. Bryan was handcuffed and held in one of the bedrooms for the duration of the operation, and McDonald was given a beer and cigarettes and told to "laugh and act like the police [were his] friends" when people came to the apartment to purchase drugs. Although Mc-Donald testified that he was forced to participate in the reverse-sting operation, the arresting officer testified that McDonald participated of his own volition. During the reverse-sting operation, approximately twenty-three people were arrested, handcuffed and processed in one of the back rooms of the apartment which was utilized as a temporary "holding cell." Officer Sarvis admitted that he did not obtain appellants' permission to set-up the operation in their home because he believed that he had the right to do so since he had a search warrant.
The trial court denied appellants' motion to suppress evidence and motion to dismiss the information stating:
I've heard of police officers serving a search warrant and while they were there people are coming in and mak[ing] purchases for short periods of time. This one extended quite a long time. Even so, I'm not prepared to say that what the police did after they found the marijuana is so outrageous. Unusual? Yes. But so outrageous as to dismiss the case for governmental misconduct? Based on those findings, I'm going to deny the motion....
Appellants challenge the order denying their motion to dismiss on the ground that the reverse-sting operation was outrageous governmental conduct which violated their due process rights and the order denying their motion to suppress on the ground that the conduct of the law enforcement officers was so outrageous as to have infringed upon their right to be free from unreasonable searches and seizures.

Motion to Dismiss
A trial court should grant a motion to dismiss an information when police conduct is so egregious as to violate the defendant's due process rights. See State v. Glosson, 462 So.2d 1082, 1084 (Fla.1985). "Due process of law imposes upon a court the responsibility to conduct `an exercise of judgment upon the whole course of the proceedings in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice.'" State v. Williams, 623 So.2d 462, 465 (Fla.1993) (quoting Malinski v. New York, 324 U.S. 401, 416-17, 65 S.Ct. 781, 89 L.Ed. 1029 (1945)). To determine whether police conduct violates a defendant's due process rights, the courts must weigh the opposing policy considerations which recognize a defendant's right to be protected from egregious governmental conduct and the government's need to combat crime.
Appellants rely upon two lines of cases in which courts have found that defendants' due process rights were violated due to governmental misconductthe so-called "drug manufacturing cases" and the entrapment cases. In State v. Williams, 623 So.2d 462 (Fla.1993), the supreme court held that the illegal manufacture of crack cocaine by the police for use in a *832 reverse-sting operation constitutes governmental misconduct that violates the due process clause of the Florida Constitution. In Williams, the court reversed the defendant's conviction for purchasing the manufactured crack cocaine. See also State v. Palmer, 623 So.2d 472 (Fla.1993) (reversing Palmer's conviction because the cocaine used in the reverse-sting had been illegally manufactured by law enforcement officials). In Metcalf v. State, 635 So.2d 11 (Fla.1994), the defendant was charged with solicitation to deliver cocaine which the sheriffs office had manufactured for use in a reverse-sting operation. The court reversed Metcalf's conviction and found that the Broward County Sheriffs Office's illegal manufacture of crack cocaine for use in a reverse-sting operation was misconduct which violated Metcalfs due process rights. In Metcalf, the court found no distinction between the purchase of illegally manufactured cocaine, as in Williams, and the solicitation to deliver that drug, in regard to whether a due process violation occurs:
Although the defendant in Williams was convicted of purchasing cocaine, the Court's holding is not limit[ed] to buying illegally manufactured drugs. It is law enforcement's illegal manufacture of crack cocaine for use in a reverse-sting operation that violates due processand not just the purchase of that cocaine. As we said in Williams, "[t]he illegal manufacture of crack cocaine by law enforcement officials violates this Court's sense of fairness and justice." Id. at 467.
635 So.2d at 13 (emphasis in original).
As an example of the entrapment cases, appellants rely on State v. Finno, 643 So.2d 1166 (Fla. 4th DCA 1994). In Finno, the police investigated the Finno brothers after receiving a tip from an informant that the Finnos were plotting to commit murder. After months of investigation revealed no murder plot, the police, through their informant, taught the Finnos how to set-up a loansharking scheme. The Finnos were charged with various crimes related to the loansharking operation. This court reversed the conviction on the ground that the Finnos were entrapped as a matter of law.
We find the nature of the government's misconduct in the entrapment cases and the drug manufacturing cases distinguishable from the misconduct alleged in the instant case. In the crack manufacturing cases and the entrapment cases, the government supplied the instrumentalities of the crime such that there would have been no crime at all without the government's involvement. Additionally, in the drug manufacturing cases, each of the defendants were charged with crimes directly related to the very object of the government's outrageous conductthe illegally manufactured cocaine. The use of governmentally manufactured crack cocaine in reverse-sting operations was so intolerable and reprehensible a concept to our supreme court that even where the charge was merely solicitation to deliver those drugs, as in Metcalf, the convictions could not stand.[1]
Unlike the use of governmentally manufactured crack cocaine, reverse-sting operations, in and of themselves, do not offend judicial notions of fairness and justice. See State v. Williams, 623 So.2d at 465. Notably, the sting operation in the instant case was not targeted at appellants, the police did not supply the instrumentalities of the crime for which appellants were charged, and appellants were not charged with any offenses stemming, directly or indirectly, from the reversesting *833 operation. Appellants were charged with possession of the marijuana which was discovered pursuant to the search warrant within minutes of the police's arrival, and McDonald was charged with delivery of cannabis because he sold marijuana to the police before they entered the home. We cannot say that the government's conduct in this case was so outrageous that it prejudiced appellants' ability to receive a fair trial or violated judicial notions of fairness and justice in relation to the prosecution of appellants' for the crimes with which they were charged.

Motion to Suppress
Appellants also challenge the trial court's denial of their motion to suppress on the basis that the reverse-sting operation, which lasted approximately seven hours, violated their right against unreasonable searches and seizures. The exclusionary rule provides a remedy for search and seizure violations by prohibiting governmental use of evidence seized in violation of the Fourth Amendment, the so-called "fruit [the evidence] of the poisonous tree [the illegal conduct]." See Wong Sun v. United States, 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. White, 660 So.2d 664, 666 (Fla.1995). In United States v. Schandl, 947 F.2d 462, 465 (11th Cir.1991), cert. denied, 504 U.S. 975, 112 S.Ct. 2946, 119 L.Ed.2d 569 (1992), Schandl argued that the trial court erred in denying his motion to suppress where Schandl accused the IRS agents of exceeding the scope of the search and going on "malicious, voyeuristic, and self-indulgent rummaging" by reading love letters and seizing personal items. The circuit court noted that the scope of the warrant, the behavior of the searching agents, the conditions under which the search was conducted, and the nature of the evidence being sought must be considered in determining whether the search was reasonable. See id. The court concluded that the trial court did not err in denying the motion to suppress because the majority of the documents were within the scope of the warrant and the irrelevant materials were returned to Schandl.
In Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), homeowners sued federal law enforcement officers under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and state law enforcement officers under 42 U.S.C. § 1983, alleging that the officers violated the homeowners' Fourth Amendment rights by bringing reporters from the Washington Post into the home to observe and record the attempted execution of an arrest warrant of the homeowners' son. The Supreme Court held that the media "ride-along" violated the homeowners' Fourth Amendment rights because the presence of the media was not related to the objectives of the authorized intrusion. See Wilson, 526 U.S. at ___, 119 S.Ct. at 1698. "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." Id. at 1697 (quoting Horton v. California, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). Nevertheless, the Court held that because the state of the law was not clearly established at the time the entry in this case took place, the officers were entitled to qualified immunity. Notably, the Court pointed out that:
Even though such actions might violate the Fourth Amendment, if the police are lawfully present, the violation of the Fourth Amendment is the presence of the media and not the presence of the police in the home. We have no occasion here to decide whether the exclusionary rule would apply to any evidence discovered or developed by the media representatives.
Id. at 1699 n. 2 (emphasis added).
Pursuant to our reading of Wilson, even if we agreed with appellants' contention that conducting the reverse-sting operation *834 as an adjunct to the execution of the warrant violated their Fourth Amendment rights, the initial search and seizure of the marijuana was well within the scope of the search warrant and can easily be severed from the conduct which followed. The record established that the evidence which was used to prosecute appellants was seized during the early moments of the search and not during the time in which the search was extended in order to facilitate the reverse-sting operation. Therefore, we affirm the trial court's denial of the appellants' motion to suppress the thirty-five bags of marijuana.
Appellants are not foreclosed from pursuing any civil remedies which may be available to them.
AFFIRMED.
KLEIN, J., concurs.
STONE, J., dissents with opinion.
STONE, J., dissenting.
I would reverse on the authority of Metcalf v. State, 635 So.2d 11 (Fla.1994). I agree fully with the majority opinion up to the point of insulating the otherwise lawful search and seizure from the outrageous conduct of the officers. The crime in Metcalf was soliciting; it did not require introduction of the illegally manufactured cocaine into evidence, or even its actual use by the deputies in the course of the sting. It was deemed sufficient that the sheriffs manufacture of the drugs used violated the court's sense of fairness and justice. Here, the police obviously intended throughout to subvert Appellants' right to be free of this unreasonable and abominable intrusion. This is not a case where the doorbell or phone happens to ring while the authorities are in the course of a search or arrest. Here, the officers used the apartment, without consent, as a stage for their sting and as a holding sell. The officers brought along more than thirty pairs of handcuffs and used the apartment for five or six hours after the purpose of the warrant was served. This conduct taints the entire proceeding. This is not only an abuse of Appellants' rights, it is an abuse of the court system that entrusts law enforcement officers with the duty to lawfully execute its warrants.
NOTES
[1] Metcalf had initially been charged with purchasing cocaine within 1,000 feet of a school. The only drug involved was the cocaine illegally manufactured in the sheriff's lab. The State changed the charge to solicitation after this court's decision in Kelly v. State, 593 So.2d 1060 (Fla. 4th DCA) (finding a due process violation where the defendant was convicted of purchasing police manufactured cocaine in a reverse-sting operation), review denied, 599 So.2d 1280 (Fla.1992). See Metcalf, 635 So.2d at 12.